## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KATHLEEN NESSER,
an individual,

        Case No.:

       Plaintiff,

v.

WAKEFIELD & ASSOCIATES, LLC,
a foreign limited liability company,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

       Defendants.

_____/

## **COMPLAINT**

**COMES NOW**, Plaintiff, KATHLEEN NESSER (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, WAKEFIELD & ASSOCIATES, LLC (hereinafter, "Wakefield"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

1

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for Wakefield's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Wakefield improperly credit-reported and subsequently verified objectively-inaccurate information related to a consumer debt account allegedly owed to Wakefield on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union.

2.     Furthermore, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union continued to incorrectly report such accounts as derogatory, negative, or adverse accounts despite Plaintiff's repeated disputes to Equifax, Experian, and Trans Union explaining and proving that such accounts should be reported as paid and closed.

3.     Finally, this is an action for damages brought by an individual consumer for Wakefield's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein Wakefield communicated directly with Plaintiff in an attempt to collect a consumer debt despite Wakefield knowing that Plaintiff was not responsible for medical bills incurred because she is a disabled veteran.

## JURISDICTION, VENUE & PARTIES

4.     Jurisdiction of this Court arises under 28 United States Code, Section

2

1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

5.      Supplemental jurisdiction exists permitting Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367 because Plaintiff's claims against Wakefield under the FCCPA arise under the same set of operative facts as Plaintiff's claims against Wakefield under the FCRA and FDCPA.

6.      Defendants are subject to the jurisdiction of this Court, as Defendants each regularly transact business in this District.

7.      Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

8.      At all material times herein, Plaintiff is a natural person residing in Manatee County, Florida.

9.      At all material times herein, Wakefield is a foreign limited liability company existing under the laws of the state of Colorado, with its principal address at 830 Ease Platte Avenue, Fort Morgan, CO 80701.

10.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

11.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

12.     At all material times herein, Trans Union is a foreign limited liability

company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

13.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

14.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

15.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

16.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

4

17.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

18.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

19.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

20.     Under the FCRA, any person who is negligent in failing to comply with

any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## FDCPA AND FCCPA STATUTORY STRUCTURE

21.    The FCCPA is a state consumer protection statute, modeled after the federal Fair Debt Collection Practices Act (the "FDCPA"), 15 United States Code, Section 1692, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

22.    The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.   15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

23.    Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

24.    For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of

any consumer debt.  See 15 U.S.C. §§ 1692(d)-(e).

25.     Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate.  See Fla. Stat. §§ 559.72 (9).

## GENERAL ALLEGATIONS

26.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by the FCCPA, Section 559.55(8).

27.     At all material times herein, Wakefield is a "person" subject to the FCCPA, Section 559.72.   See Fla. Stat. § 559.55(3); Schauer v. General Motors Acceptance Corp., 819 So. 2d 809 (Fla. 4th DCA 2002).

28.     At all material times herein, Wakefield attempts to collect an alleged consumer debt, including but not limited to, a balance allegedly owed for a medical services (hereinafter, the "Alleged Debt").

29.     At all material times herein, the Alleged Debt is a consumer debt, an alleged obligation resulting from a transaction for goods or services incurred primarily for personal, household, or family use.

30.     At all material times herein, Wakefield's conduct, with respect to the Alleged Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(6).

31.     At all material times herein, Wakefield sent written correspondence to Plaintiff in an attempt to collect the Alleged Debt.

32.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a

debt.

33.    At all material times herein, Wakefield, itself and through its subsidiaries, each regularly services consumer credit and credit-reports information associated with the same in Manatee County, Florida.

34.    At all material times herein, Wakefield uses interstate mail and the principal purpose of its business is to collect debt.

35.    At all material times herein, Wakefield is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

36.    At all material times herein, Wakefield reports information to Equifax, Experian, and Trans Union an alleged Account referenced by account number beginning 1231- (hereinafter, the "Account").

37.    At all material times herein, Plaintiff is a disabled veteran and is not responsible for any of the medical bills incurred that should have been billed to Veteran Affairs.

38.    At all material times herein, Wakefield furnishes incorrect and/or incomplete information concerning the Account to Equifax, Experian, and Trans Union—continuing after Plaintiff's repeated disputes—despite Wakefield knowing that they failed to send the original bill to Veteran Affairs for payment.

39.    Wakefield furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent

accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

40.     At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

41.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

42.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

43.     During or about April 2021, Plaintiff incurred two medical bills from Truepartners Lakewood Inpatient Specialist (hereinafter, "Truepartners").

44.     Plaintiff is a disabled veteran and was referred to Truepartners for treatment by a Veteran Affairs physician.

45.     As such, Truepartners was obligated to send Plaintiff's medical bills to Veteran Affairs within six months of creation to receive payment.

46.     Truepartners failed to send one of the two bills to Veteran Affairs for

payment.

47.     Therefore, Truepartners was prohibited from contractually receiving payment from the VA.

48.     Additionally, the bill was partially paid pursuant to the Medicare allowable VA CCN rates.

49.     As such, as of April 2021, Plaintiff no longer owed a balance on the Account.

50.     Despite Plaintiff not owing a balance regarding the Account no later than April 2021, Truepartners sent the bill to Sapientes Funding II LLC for collections and ultimately the Alleged Debt was transferred to Wakefield for collections.

## ALLEGATIONS IN SUPPORT OF
## FDCPA AND FCCPA CLAIMS AGAINST WAKEFIELD

51.     Between May 2023 and the date of the Complaint, Wakefield repeatedly sent billing statements and collection letters to Plaintiff in an attempt to collect the alleged balanced owed on the Account (i.e., the Alleged Debt).

52.     Prior to sending its repeated debt collection communications, Wakefield possessed knowledge that the Alleged Debt was not owed by Plaintiff personally, as Plaintiff is a disabled veteran and Truepartners failed to file the bill for payment with the VA; therefore, Wakefield knew that Plaintiff was not and is not personally liable to pay the Alleged Debt balance to Wakefield.

53.     Despite Wakefield receiving repeated notice from Plaintiff that she did not owe the Alleged Debt for the aforementioned reasons, communicated with

Plaintiff between May 2023 and to the date of this Complaint wherein Wakefield demanded payment from Plaintiff on the Alleged Debt.

54.     More specifically, on or about May 28, 2023, Wakefield sent multiple collection letters directly to Plaintiff in an attempt to collect the Alleged Debt, alleging balances as owed by Plaintiff directly. Please see attached a true and correct copy of Wakefield's collection letters labeled as Composite **Exhibit "A."**

55.     Wakefield's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state law.

56.     Given Wakefield's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

57.     Plaintiff needs and is entitled to injunctive relief with respect to Wakefield's debt collection communications in violation of the FCCPA.

58.     Wakefield's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing the balances on the medical bills personally as a disabled veteran, Wakefield could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

## **PLAINTIFF'S DISPUTES**

59.     During or about November 2023, Plaintiff obtained her credit disclosure reports as maintained by Equifax, Experian, and Trans Union.

60.     Equifax, Experian, and Trans Union each reported the Account as an

open collections account with a balance due and past due of $1,214.

61.    On or about November 3, 2023, Plaintiff sent a letter directly to Equifax, Experian, and Trans Union disputing the reporting of the Account (hereinafter, "First Dispute Letter"). Please see attached a true and correct copy of Plaintiff's First Dispute Letter labeled as **Exhibit "B."**

62.    Specifically, Plaintiff's First Dispute Letter advised Equifax, Experian, and Trans Union that any balance asserted as owed by Wakefield was incorrect, as the original creditor had failed to timely submit the bill to the VA. *Id.*

63.    Trans Union communicated Plaintiff's First Dispute to Wakefield.

64.    Equifax communicated Plaintiff's First Dispute to Wakefield.

65.    Experian communicated Plaintiff's First Dispute to Wakefield.

66.    Wakefield received Plaintiff's First Dispute Letter from Equifax, Experian, and Trans Union.

67.    In response to Plaintiff's First Dispute Letter, Equifax, Experian, and Trans Union each purportedly verified their respective reporting of the Account.

68.    On or about November 21, 2023, Plaintiff sent *another* letter to Equifax *again* disputing the credit reporting of the Account, *again* advising that the Account was improperly billed, and *again* demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, "Plaintiff's Second Dispute Letter"). Please see attached a true and correct copy of Plaintiff's Second Dispute Letter labeled as **Exhibit "C."**

69.   Equifax received Plaintiff's Second Dispute Letter.

70.   Equifax communicated Plaintiff's Second Dispute Letter to Wakefield.

71.   On or about December 1, 2023, Equifax sent a letter to Plaintiff in response to Plaintiff's Second Dispute Letter, demanding additional documents from the VA.  Please see attached a true and correct copy of said letter labeled as **Exhibit "D."**

72.   On or about December 13, 2023, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union, *again* disputing the credit reporting of the Account and *again* demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, "Plaintiff's Third Dispute Letter"). Please see attached a true and correct copies of Plaintiff's Third Dispute Letter labeled as Composite **Exhibit "E."**

73.   Additionally, Plaintiff included the explanation of benefits regarding the Account.

74.   Equifax, Experian, and Trans Union received Plaintiff's Third Dispute Letter.

75.   Equifax communicated Plaintiff's Third Dispute Letter to Wakefield.

76.   Experian communicated Plaintiff's Third Dispute Letter to Wakefield.

77.   Trans Union communicated Plaintiff's Third Dispute Letter to Wakefield.

78.   Trans Union failed to respond to Plaintiff's Third Dispute Letter.

79.     On or about December 21, 2023, Equifax sent a letter to Plaintiff, again demanding documents from the VA.

80.     On or about January 8, 2024, Experian sent a letter to Plaintiff in response to Plaintiff's Third Dispute Letter, purportedly verifying its reporting of the Account.

## DAMAGES

81.     As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

82.     Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct.

83.     Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

84.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

85.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to

obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account as an existing payment obligation with a balance due and past due resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

86.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing a balance on the Account personally and despite Plaintiff repeatedly advising Defendants of the same, Plaintiff must simply endure Defendants' unlawful reporting of the Account and Wakefield's ongoing attempts to collect the Alleged Debt.

87.     As of the date of this Complaint, Wakefield has not initiated a lawsuit to recover the Alleged Debt from Plaintiff.  Likewise, Wakefield has not obtained a final judgment regarding the Alleged Debt and a final judgment regarding the Alleged Debt has not been transferred to Wakefield.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to Wakefield)**

Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

88.     Wakefield is subject to, and violated the provisions of, 15 United States

Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and Trans Union correct the Account on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

89.    As described above, Plaintiff did not owe a balance to Wakefield because Truepartners failed to submit the original bill for payment and Plaintiff was never personally responsible for the original bill.

90.    Despite Plaintiff not owing the Alleged Debt, Wakefield reported the Account to the national credit bureaus as an open collections account with a balance remaining owed, due, and past due from Plaintiff.

91.    Between November 2023 and December 2023, Wakefield received notice of Plaintiff's disputes from Equifax, Experian, and Trans Union.

92.    Following Plaintiff's Third Dispute Letter, Wakefield confirmed and/or verified their reporting to Equifax, Experian, and Trans Union showing that the Account was an open payment obligation with a balance remaining due and past due.

93.    Plaintiff never owed a balance on the Account pursuant to her disabled veteran status.

94.    As such, it is inaccurate and/or materially misleading to report any balance remaining due or past due on the Account.

95.    Wakefield's refusal to request that Equifax, Experian, and Trans Union

correct the tradeline associated with the Account was intentionally, willfully, and knowingly done as Wakefield clearly possessed knowledge of any payments Wakefield received in satisfaction of the balances on the Account.

96.    Wakefield's re-investigations were not conducted in good faith.

97.    Wakefield's re-investigations were not conducted reasonably.

98.    Wakefield's re-investigations were not conducted using all information reasonably available to Wakefield.

99.    As a result of Wakefield's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Wakefield's derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with balances due and past due resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

100.   Wakefield's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

101.   Wakefield's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n

or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (as to Equifax, Experian, and Trans Union)

Plaintiff re-alleges paragraphs one (1) through fifty (50) and fifty-nine (59) through eighty-seven (87) as if fully restated herein and further states as follows:

102.   Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

103.   Equifax, Experian, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

104.   Specifically, despite Plaintiff never owing the balance on the Account personally, and despite Plaintiff's repeated disputes advising Equifax, Experian, and Trans Union of the same, Equifax, Experian, and Trans Union continued to unlawfully report the Account as an existing payment obligation with an amount remaining due and past due resulting in the Account being reported as a derogatory, negative, or adverse account.

105.   Such reporting of the Account is false and evidences Equifax, Experian, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

106.   Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax, Experian, and Trans Union credit reports and credit file.

107.   As a result of Equifax, Experian, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with balances due and past due resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

108.   Equifax, Experian, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

109.   Equifax, Experian, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**

**FAIR CREDIT REPORTING ACT –
VIOLATION OF 15 UNITED STATES CODE
SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)
(as to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through fifty (50) and fifty-nine (59) through eighty-seven (87) as if fully restated herein and further states as follows:

110.   Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (3) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (4) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

111.   Specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

112.   For example, despite Equifax, Experian, and Trans Union receiving each of Plaintiff's above-referenced disputes, Equifax, Experian, and Trans Union subsequently continued to report the Account as a derogatory tradeline and reported a balance as remaining due from Plaintiff personally.

113.   Equifax, Experian, and Trans Union did not request any documents from

20

Wakefield corroborating information furnished and/or verified by Wakefield regarding Plaintiff and the Account in response to any of Plaintiff's disputes.

114.    Equifax, Experian, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

115.    Despite receiving each of Plaintiff's disputes, each of which explained that Plaintiff did not personally owe the balance because she was a disabled veteran, including documents stating as such, allowing Equifax, Experian, and Trans Union to determine that the Account must be corrected on Plaintiff's credit reports and credit file, Equifax, Experian, and Trans Union *continued* to report the Account with an erroneous balance remaining due and past due.

116.    As such, Equifax, Experian, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

117.    Such reporting is false and evidences Equifax, Experian, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

118.    Equifax, Experian, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

119.    Equifax, Experian, and Trans Union's reinvestigations merely copied, parroted, and relied upon the inaccurate Accounts information conveyed by Wakefield.

120.   Equifax, Experian, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

121.   Equifax, Experian, and Trans Union's reinvestigation procedures are unreasonable.

122.   Equifax, Experian, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian, and Trans Union.

123.   Equifax, Experian, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax, Experian, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

124.   As a result of Equifax, Experian, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline accounts.

125.   Equifax, Experian, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

126.   Equifax, Experian, and Trans Union's actions in violation of 15 United

States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and**
**e(10)**
**(as to Wakefield)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

130.    Wakefield is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

131.    More specifically, Wakefield knew that Plaintiff did not personally owe the balance on the Account because she is a disabled veteran and the original creditor was under contractual obligation to bill the VA.

132.    Therefore, Wakefield necessarily knew that Plaintiff did not owe a balance on the Account.

133.    Despite Plaintiff never personally owing a balance on the Account forming the Alleged Debt, Wakefield continued to report the Account as an open payment obligation with a balance remaining due and past due.

134.    As a direct and proximate result of Wakefield's actions, Plaintiff

sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

135.    Wakefield is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting an alleged consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

136.    Additionally, Plaintiff repeatedly advised the original creditor to contact the VA regarding payment of her expenses through her benefits as a disabled veteran and to cease contacting her regarding payment of the Alleged Debt.

137.    Despite Plaintiff demanding that Wakefield stop communicating with Plaintiff in an attempt to collect the Alleged Debt, Wakefield continued to report inaccurate information regarding Plaintiff and send billing statements to Plaintiff.

138.    More specifically, Wakefield sent *at least* one (1) billing statement directly to Plaintiff in its attempt to collect the Alleged Debt.

139.    Wakefield's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe Wakefield could and would continue to attempt to collect the Alleged Debt from Plaintiff until Plaintiff paid the Alleged Debt in full.

140.    Wakefield's willful violation of, inter alia, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful

24

conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

141.    As a direct and proximate result of Wakefield's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT SIX:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

142.    Wakefield is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that Wakefield knows does not exist.

143.    Specifically, Wakefield possessed actual knowledge that Plaintiff's expenses were covered by the VA as a disabled veteran.

144.    Despite knowing that Plaintiff did not owe the Alleged Debt, Wakefield sent *at least* one (1) billing statement directly to Plaintiff in its attempt to collect the Alleged Debt.

145.    Wakefield's letters constitute a direct attempt by Defendant to collect the Alleged Debt from Plaintiff.

146.    Moreover, despite Plaintiff's expenses being covered by the VA as a disabled veteran, Wakefield's conduct showed that Wakefield could and would continue to hold Plaintiff personally responsible for the Alleged Debt unless and until Plaintiff made payment on the Alleged Debt.

147.   Wakefield does not possess the legal right to assert a balance owed on the Alleged Debt from Plaintiff or to assert that Wakefield could and would continue to hold Plaintiff personally responsible for the amount owed on the Alleged Debt.

148.   As such, Wakefield attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted legal rights that do not exist in their communication with Plaintiff made in an attempt to collect the Alleged Debt.

134.   As a direct and proximate result of Wakefield's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Equifax, Experian, Trans Union, and Wakefield for maximum statutory damages for violations of the FCRA;

b.    Judgment declaring that Wakefield violated the FCCPA;

c.    Judgment enjoining Wakefield from engaging in further conduct in violation of the FCCPA;

d.    Judgment against Wakefield for maximum statutory damages under the FCCPA;

e.    Judgment against Wakefield for maximum statutory damages for violations of the FDCPA;

f.    Actual damages in an amount to be determined at trial;

g.    Compensatory damages in an amount to be determined at trial;

h.    Punitive damages in an amount to be determined at trial;

i.    An award of attorney's fees and costs; and

j.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*

**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
11300 4th Street North, Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*